David H. Krieger, Esq.
Nevada Bar No. 9086
George Haines, Esq.
Nevada Bar No. 9411
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
dkrieger@hainesandkrieger.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
matthew.knepper@knepperclark.com
miles.clark@knepperclark.com

Sean N. Payne
Nevada Bar No. 13216
PAYNE LAW FIRM LLC
9550 S. Eastern Ave. Suite 253-A213
Las Vegas, NV 89123
702-952-2733
Fax: 702-462-7227
seanpayne@spaynelaw.com

Thomas A. Zimmerman, Jr.
tom@attorneyzim.com
Nickolas J. Hagman
*nick@attorneyzim.com*
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com
*Pro Hac Vice Application to Be Submitted*

Robert A. Clifford
*rac@cliffordlaw.com*
Shannon M. McNulty
*smm@cliffordlaw.com*
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, Suite 3100
Chicago, Illinois 60602
(312) 899-9090 telephone
(312) 899-9090 facsimile
*Pro Hac Vice Application to Be Submitted*

Marc E. Dann
Brian D Flick
DANNLAW
P.O. Box 6031040
Cleveland, OH  44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Pro Hac Vice Application to Be Submitted*

Attorneys for Plaintiff and the Class

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| TERRANCE KNEPPER, individually, and on behalf of all similarly situated individuals, | : | Civil Action No.: |
| | : | |
| | : | **COMPLAINT FOR DAMAGES PURSUANT TO** |
| Plaintiff, | : | **THE FAIR CREDIT REPORTING ACT, 15** |
| v. | : | **U.S.C. § 1681, ET SEQ., AND FOR DAMAGES** |
| | : | **AND EQUITABLE RELIEF UNDER NEVADA** |
| EQUIFAX INFORMATION SERVICES, LLC, | : | **LAW** |
| | : | |
| Defendant. | : | **JURY TRIAL DEMANDED** |

## JURISDICTION AND VENUE

1.      This Court has federal question jurisdiction because this case arises out of violation of federal law, specifically the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA").  28 U.S.C. §1331; *Smith v. Community Lending, Inc.*, 773 F. Supp. 2d 941, 946 (D. Nev. 2011).

2.      This Court has supplemental jurisdiction to hear all state law claims under NRS 598C pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff is a resident of Clark County, the State of Nevada and because Defendant is subject to personal jurisdiction in the County of Clark, State of Nevada as it conducts business there. Venue is also proper because the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2).

## PARTIES

4.      Plaintiff Terrance Knepper ("Plaintiff") is a natural person residing in the County of Clark, State of Nevada.

5.      Plaintiff and all putative Class members are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).

6.      Plaintiff and the members of the Subclass are also all "consumers" as that term is used in NRS 598C.070.

7.      Defendant Equifax Information Services, LLC ("Equifax") is a limited liability company incorporated under the laws of the State of Georgia with its principal place of business

located at 1550 Peachtree Street NE, Atlanta, GA and doing business in the State of Nevada.

8.    Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).  Equifax is also a "Consumer Reporting Agency that Compiles and Maintains Files on Consumers on a Nationwide Basis" as that term is defined under 15 U.S.C. § 1681a(p).

9.    On information and belief, Equifax is also a "reporting agency" for purposes of NRS 598C.

10.    Unless otherwise indicated, the use of Equifax's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Equifax.

## INTRODUCTION

11.    Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.  Consumer reporting agencies ("CRAs") have assumed a vital role in assembling and evaluating consumer credit; and the FCRA seeks to ensure that CRAs exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.  15 U.S.C. § 1681.

12.   A central duty the FCRA and NRS 598C imposes upon CRAs is the duty to protect the consumer's privacy by guarding against inappropriate disclosure to third parties.   15 U.S.C. § 1681b codifies this duty, and permits a CRA to disclose a consumer's information only for one of a handful of exclusively defined "permissible purposes."  To ensure compliance, CRAs must maintain reasonable procedures to ensure that such third party disclosures are made exclusively for permissible purposes.  15 U.S.C. § 1681e(a); NRS 598C.140.

13.   The FCRA defines "consumer report" broadly, as "any written, oral, or other communication of any information by a CRA bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d); *see* NRS 598C.060.

14.   The FCRA and NRS 598C also entitle the consumer to take an active role in the protection of his or her sensitive personal information, by giving the consumer a right to request "All information in the consumer's file at the time of the request."  15 U.S.C. § 1681g(a)(1); *see* NRS 598C.130(1).  "File," is explicitly defined in the FCRA and NRS 598C when applied to consumers, and means, "all of the information on that consumer and retained by a consumer reporting agency regardless of how the information is stored."  15

U.S.C. § 1681a(g); *see* NRS 598C.070. Pursuant to section 1681g and NRS 598C.130(1), when a CRA discloses to a consumer that consumer's file, the disclosure must "clearly and accurately" reflect all the information in that consumer's file at the time of the disclosure. 15 U.S.C. § 1681g(a)(1); NRS 598C.130

15.    The information disclosed under Section 1681g of the FCRA must also include an identification of each person who "procured" a consumer report for employment or another purpose. 15 U.S.C. § 1681g(a)(3). Under NRS 598C.130, a disclosure must include "the name of each person who has received from the reporting agency information concerning him or her" for any purpose other than for purposes of "employment, promotion, reassignment or retention as an employee" for the preceding 6 months. NRS 598C.130(2)(b).

16.    Disclosing sufficient information about these third parties can assist consumers in determining whether their identity has been compromised, or whether a consumer reporting agency has made any disclosures for an impermissible purpose. *See also* 15 U.S.C. § 1681c-1(a)-(b) (permitting consumers to obtain additional copies of their consumer disclosures at no charge in the case of suspected identity theft); NRS 598C.300 (permitting consumer to place a security freeze on their files).

17.    Through immediate review of the details of when, and for what purpose, a consumer's information has been disclosed to a third party, a consumer may better understand whether their identity has been stolen, or whether the sheer number of inquiries from a particular third party warrants further investigation.

18. Plaintiff, individually and on behalf of those similarly situated, brings this action to challenge the actions of Equifax in the protection and safekeeping of the Plaintiff's and Class members' personal information.

19. Equifax failed to properly provide complete, clear, and accurate disclosures to Plaintiff, the Class, and the Subclass, as required under 15 U.S.C. § 1681g and NRS 598C.130.

20. By failing to provide notice of the Data Breach in its consumer disclosures, Equifax made a "false representation in a transaction," in violation of NRS 598.0915(15). Equifax also failed to "disclose a material fact in connection with the sale . . . of goods or services," which was a deceptive trade practice under NRS 598.0923(2). Equifax's violations of 15 U.S.C. 1681g and NRS 598C also "relat[ed] to the sale . . . of goods or services," and thus violated NRS 598.0923(3).

21. Equifax's violations of NRS 598.0915(15) and 598.0923(2), (3) constituted "consumer fraud" for purposes of NRS 41.600(2)(e).

## FACTUAL ALLEGATIONS

### *Equifax's May 2017 Data Breach*

22. Equifax, as a national CRA, routinely makes consumer disclosures under 15 U.S.C. § 1681g and NRS 598C.130.

23. On or before July 29, 2017, Equifax discovered that one or more of its servers, which contained Plaintiff's and Class members' sensitive personal information including their names, full Social Security numbers, birth dates, addresses, and, upon belief, their driver's license numbers and possibly one or more of their credit cards, had been

breached or "hacked" by a still unknown third party ("Data Breach").  The Data Breach occurred between mid-May 2017 through July 2017.  The information disclosed in the Data Breach constitutes a "consumer report" because it is information "bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living."   15 U.S.C. 1681a(d); NRS 598C.060.[1]

24.   In early August 2017, before the fact of the breach was made public, three Equifax executives sold at least $1.8 million worth of Equifax shares of stock.

25.   Upon belief, when Equifax discovered this breach, Equifax immediately began an internal investigation and contracted with an unidentified third-party cybersecurity firm to conduct a comprehensive forensic review to determine the scope of the hack including identifying the specific data impacted.   As of the filing of this Complaint, that investigation remains ongoing and has not yet been completed despite over six weeks elapsing since the initial breach.

26.   On September 7, 2017, major news outlets began reporting about the Data Breach.  (*See, e.g.*, *Massive Equifax Data Breach Could Impact Half of the U.S. Population*, Alyssa Newcomb, NBCNEWS, Sept. 7, 2017, available at: https://www.nbcnews.com/tech/security/massive-equifax-data-breach-could-impact-half-u-s-population-n799686).

---

[1] Equifax has been subject to numerous allegations regarding data breaches in the past.  (*See, e.g.*, *A Brief History of Equifax Security Fails*, Thomas Fox-Brewster, FORBES, Sept. 8, 2017, available at: https://www.forbes.com/sites/thomasbrewster/2017/09/08/ equifax-data-breach-history/#63dc4270677c).

27.     For the Plaintiff, as with all potential Class members, these news stories were the first time that they had been informed that their information secured by Equifax had been compromised six (6) weeks earlier, and they now live in constant fear that their information has been compromised.

### Equifax's Consumer Disclosures After the Data Breach

28.     After the Data Breach occurred, Equifax made numerous consumer disclosures to individual consumers under 15 U.S.C. § 1681g and NRS 598C.130.  This included Plaintiff, who on August 9, 2017, received a Section 1681g consumer disclosure from Equifax, which made no reference to the Data Breach or any consumer report accessed as a result of the Data Breach.[2]

29.     Equifax failed to provide an "identification" in any of these consumer disclosures of the person or person(s) who had "procured" the consumer's information as a result of the Data Breach – even though Equifax knew of the breach and could have listed a name as "unknown" at the time.  This violated 15 U.S.C. 1681g and NRS 598C.130, and rendered its consumer disclosures misleading and confusing.

---

[2] After the fact of the Data Breach was publicly disclosed, Plaintiff accessed an Equifax website to determine whether her credit had been checked.  *See Cybersecurity Incident & Important Consumer Information: A Progress Update for Consumers*, EQUIFAX, available at: https://www.equifaxsecurity2017.com; *Cybersecurity Incident & Important Consumer Information: Schedule. Enroll. Activate.*, https://www.equifaxsecurity2017.com/enroll/.  Access to, and use of, Equifax's website and credit monitoring products was made subject to "terms and conditions" which purport to include a class action waiver.  *See Terms of Use*, EQUIFAX, available at: http://www.equifax.com/terms/; *TrustedID Premier Terms of Use*, EQUIFAX, *available at:* https://trustedidpremier.com/static/terms.  While Plaintiff does not believe that these terms and conditions are enforceable against herself or any Class members as, *inter alia*, they violate public policy, out of an abundance of caution she expressly rejects these terms and will be mailing a copy of this Complaint to Equifax Consumer Services LLC, Attn.: Arbitration Opt-Out, P.O. Box 105496, Atlanta, GA 30348.

30.    Alternatively, Equifax's inability to provide the name of the individuals who had "procured" the consumer's information as a result of the Data Breach meant that it could not actually provide a disclosure under 15 U.S.C. § 1681g and NRS 598C.130, although Equifax represented to consumers that it could make such disclosures.  This rendered Equifax's consumer disclosures misleading and confusing.

31.    Based on the foregoing, any consumer disclosure Equifax issued between mid-May through September 6, 2017 which did not identify at least the fact of the breach as one of its 15 U.S.C. § 1681g(a)(1), (3) and NRS 598C.130(2)(b) disclosures violated 15 U.S.C. § 1681g(a) and NRS 598C.130.

32.    By failing to provide notice of the Data Breach in its consumer disclosures, Equifax made a "false representation in a transaction," in violation of NRS 598.0915(15).  By failing to provide notice of the Data Breach in its consumer disclosures, Equifax also failed to "disclose a material fact in connection with the sale . . . of goods or services," which was a deceptive trade practice under NRS 598.0923(2).  Equifax's violations of 15 U.S.C. 1681g and NRS 598C also "relat[ed] to the sale . . . of goods or services," and thus violated NRS 598.0923(3).

33.    Equifax's violations of NRS 598.0915(15) and 598.0923(2), (3) constituted "consumer fraud" for purposes of NRS 41.600(2)(e).

***Harms Suffered as a Result of the Consumer Disclosures After the Data Breach***

34.    Equifax's decision to make these inaccurate, incomplete, and misleading disclosures has deprived Plaintiff and Class members of information they were entitled to receive under

15 U.S.C. § 1681g(a) and NRS 598C.130.  As such, these consumers have lost a benefit conferred on them by Congress, which cannot be replaced.

35.    Equifax's failures also violate a consumer's statutory right to privacy because the consumer is deprived of the opportunity to independently investigate the information in their file for completeness, accuracy, and potential fraud – in short, to ensure that the consumer has "meaningfully authorized" the disclosures which have been made to third parties.

36.    As such, Equifax's failures subjected each consumer to a concrete informational injury, as these consumers were deprived of their opportunity to meaningfully consider and address issues related to the potential fraud, as well as to avail themselves of the remedies available under the FCRA to prevent further dissemination of their private information, including but not limited to the potential remedies under 15 U.S.C. §§ 1681c-1, 1681c-2, as well as NRS 598C.300.

37.    The harms to Plaintiff and Class members identified above were complete at the time each 15 U.S.C. § 1681g and NRS 598C.130 disclosure occurred.

### *Equifax's Liability and Culpability for Its Statutory Failures*

38.    Equifax's decision to conceal the fact of the Data Breach from consumers who requested their disclosures under 15 U.S.C. § 1681g and NRS 598C.130 between mid-May 2017 and July 29, 2017 was at least negligent, and also reckless, as Equifax should have had reasonable procedures in place to ensure that disclosures of credit information were made for a permissible purpose under 15 U.S.C. § 1681e(a) and NRS 598C.060.

39.     Additionally, Equifax's decision to conceal the Data Breach from consumers who

requested their disclosures under 15 U.S.C. § 1681g and NRS 598C.130 between July 30,

2017 and September 6, 2017 was willful, as Equifax had direct knowledge of the Data

Breach and knew it was obligated to disclose the fact of the breach, and/or the name of

the third party who had "procured" each consumer's personal information. Alternatively,

Equifax knew it could not make a complete disclosure of information in consumer "files"

during this time, but represented to consumers that it could.

## CLASS ALLEGATIONS

40.     Plaintiff brings this action on behalf of a nationwide class of all similarly situated

individuals ("Class"), defined as:

All persons in the United States who, between May 15, 2017 and September 6, 2017, requested and obtained their Equifax consumer disclosure, which failed to identify the fact of the data breach and/or list any third party who had obtained their private, personal information as a result of the data breach.

Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

41.     Plaintiff also brings this action on behalf of a subclass of all similarly situated individuals

in Nevada ("Subclass"), defined as:

All persons in Nevada who, between May 15, 2017 and September 6, 2017, requested and obtained their Equifax consumer disclosure, which failed to identify the fact of the data breach and/or list any third party who had obtained their private, personal information as a result of the data breach.

Excluded from the Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

42.     At this time the Plaintiff does not know the size of the Class because the information is exclusively in the possession of Equifax, but believes that the potential number of Class members is so numerous that joinder would be impracticable.  It has been reported that the Class could consist of over 100 million people.  The number of Class members can be determined through discovery, particularly investigation of Equifax's internal records.

43.     All members of the Class have been subject to and affected by a uniform course of conduct in that all Class members' personal information was compromised during the data breach.  These are questions of law and fact common to the proposed Class that predominate over any individual questions.  The questions common to all Class members include, but are not limited to:

      a.     Whether Defendant failed to provide consumers with clear, accurate, and complete disclosures of the information in their file when requested;

      b.     Whether Defendant omitted reference to the Data Breach from those disclosures;

      c.     Whether Plaintiff and Class members suffered damages as a result of Defendant's failure to comply with FCRA and NRS 598C based on the failure to disclose information related to the Data Breach;

      d.     Whether Plaintiff and Class members are entitled to appropriate equitable relief, including an order requiring Defendant to re-issue clear, accurate, and complete consumer disclosures to all Class members at no cost;

   e.  Whether Plaintiff and Class members are entitled to statutory damages; and

   f.  Whether Plaintiff and Class members are entitled to punitive damages.

44. Plaintiff's claims are typical of the Class, as Plaintiff's personal information was compromised during the Data Breach and it was not disclosed to Plaintiff.  All claims are based on the same legal and factual issues.

45. Plaintiff will adequately represent the interests of the Class and does not have an adverse interest to the Class.  If individual Class members prosecuted separate actions, it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct.  A class action is the superior method for the quick and efficient adjudication of this controversy.  Plaintiff's counsel has experience litigation consumer class actions.

46. NRS 41.600(3)(b) permits, *inter alia*, the issuance of "any equitable relief that the court deems appropriate."   Although Defendant's failure to provide clear, accurate, and complete consumer disclosures during the Class period was complete, Class members are entitled to an order requiring Defendant to provide, at no cost, clear and accurate consumer disclosures to every Class member.  Plaintiff and Subclass members should not be forced to relinquish their legal rights in order to obtain the statutory benefits permitted to them by Congress and the Nevada legislature.

47. Further, under Fed. R. Civ. Pro. 23(a), Defendant acted on grounds generally applicable to the proposed Class, making appropriate final injunctive relief with respect to the proposed Class as a whole.

## COUNT ONE: VIOLATION OF 15 U.S.C. 1681 *et seq.*

48.     Plaintiff restates all allegations contained in Paragraphs 1 through 47 as if fully rewritten herein.

49.     This Count is brought on behalf of the nationwide Class.

50.     Equifax failed to make clear, accurate, and complete disclosures which included notification of the Data Breach between May 15, 2017 and September 6, 2017, violating 15 § U.S.C. 1681g.

51.     As a result of each and every willful violation of FCRA, Plaintiff and Class members are entitled to: actual damages, pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages, pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages, as this Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

52.     As a result of each and every negligent non-compliance of the FCRA, Plaintiff and Class members are also entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendant.

## COUNT TWO: VIOLATION OF NEVADA LAW

53.     Plaintiff repeats and re-allege Paragraphs 1 through 52, with the same force and effect as though fully set forth herein.

54.     This Count is brought on behalf of the Nevada Subclass.

55.     Equifax failed to make clear, accurate, and complete disclosures which included notification of the Data Breach between May 15, 2017 and September 6, 2017, thus violating NRS 598C.130.

56.     Equifax's violations of NRS 598C.130 related to its providing of goods or services in the form of consumer disclosures, thus violating NRS 598.0923(3).

57.     Equifax's failure to provide notice of the Data Breach in its consumer disclosures also constituted the failure to disclose a material fact in connection with the sale of a good or service, in violation of NRS 598.0923(2).

58.     Equifax's failure to provide notice of the Data Breach in its consumer disclosures also constituted the making of a false representation in a transaction, in violation of NRS 598.0915(15).

59.     Based on the above violations of NRS 598.0915(15) and 598.0923(2) and (3), Equifax's conduct constituted consumer fraud under NRS 41.600(2)(e).

60.     As a result of each and every willful violation of NRS 598C, Plaintiff and Subclass members are entitled to: actual damages, pursuant to NRS 598C.190(1); punitive damages, as this Court may allow, pursuant to NRS 598C.190(2); and reasonable attorneys' fees and costs pursuant to NRS 598C.190(3).

61.     As a result of each and every negligent non-compliance of the NRS 598C, Plaintiff and Subclass members are also entitled to actual damages, pursuant to NRS 598C.200(1); and reasonable attorney's fees and costs pursuant to NRS 598C.200(2) from Equifax.

62.     As a result of each and every violation of NRS 41.600(2)(e), Plaintiff and Subclass are entitled to equitable injunctive relief, in the form of an order requiring Equifax to provide Plaintiff and Subclass members with new, clear, accurate, and complete consumer disclosures.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Terrance Knepper, individually and on behalf of the Class, respectfully requests the following relief against Defendant Equifax Information Services, LLC:

A)     For an award of actual damages against Defendant for all allegations contained in Count One and Count Two;

B)     For an award of statutory damages pursuant to 15 U.S.C. 1681n(a)(1) against Defendant for the allegations contained in Count One for each eligible Class member and the Plaintiff;

C)     For an award of punitive damages against Defendant for the allegations contained in Count One and Count Two as this Court may allow pursuant to 15 U.S.C. 1681n(a)(2) and the NRS 598C.190(2);

D)     For an award of the costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. 1681n(a)(3) and 15 U.S.C. 1681(o)(1)(1) against Defendant for each incident of noncompliance of FCRA alleged in Count One and under NRS 598C.190(3) and NRS 598C.200(2) as alleged in Count Two; and

E)     For all other relief this Court may deem just and proper.

//

//

//

//

//

//

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: September 10, 2017

Respectfully Submitted,

| | |
|---|---|
| /s/ *David H. Krieger, Esq.*<br>David H. Krieger, Esq.<br>George Haines, Esq.<br>HAINES & KRIEGER, LLC<br>8985 S. Eastern Ave., Suite 350<br>Henderson, NV 89123 | Thomas A. Zimmerman, Jr.<br>Nickolas J. Hagman<br>ZIMMERMAN LAW OFFICES, P.C.<br>77 W. Washington Street, Suite 1220<br>Chicago, Illinois 60602<br>*Pro Hac Vice Application to Be Submitted* |
| Matthew I. Knepper, Esq.<br>Miles N. Clark, Esq.<br>KNEPPER & CLARK LLC<br>10040 W. Cheyenne Ave., 170-109<br>Las Vegas, NV 89129 | Robert A. Clifford<br>Shannon M. McNulty<br>CLIFFORD LAW OFFICES, P.C.<br>120 N. LaSalle Street, Suite 3100<br>Chicago, Illinois 60602<br>*Pro Hac Vice Application to Be Submitted* |
| Sean N. Payne<br>PAYNE LAW FIRM LLC<br>9550 S. Eastern Ave. Suite 253-A213<br>Las Vegas, NV 89123 | Marc E. Dann<br>Brian D Flick<br>DANNLAW<br>P.O. Box 6031040<br>Cleveland, OH 44103<br>*Pro Hac Vice Application to Be Submitted* |

*Counsel for the Plaintiff and the Class*